UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

**CIVIL ACTION NO. 10-16-JBC**

**NANCY L. CANNING,** **PLAINTIFF,**

**V.** **MEMORANDUM OPINION AND ORDER**

**BARBARA W. POOLE, ET AL.,** **DEFENDANTS.**

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the motion of one of the defendants, Judge Mary Jane Phelps, to dismiss the claims against her pursuant to Rule 12(b) of the Federal Rules of Civil Procedure for failing to state claim upon which relief may be granted. R. 17. For the reasons below, the court will grant the motion.

**I.   Background**

This case arises from a dispute regarding veterinary bills and involves multiple defendants. The following factual background details the allegations relevant to the instant motion and reflects the fact that the court has construed the complaint in a light most favorable to Canning and has accepted all of her factual allegations as true. *See Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998).

The plaintiff, Nancy Canning, hired one of the defendants, Barbara Poole, DVM, to perform certain veterinary services on several of her horses. Canning alleges that Poole violated the terms of their oral contract by providing unauthorized treatment and by over-billing her. Canning alleges that she received her first billing

statement from Poole ("statement 1") on May 16, 2009, which showed the total amount owing as $4,659.80, but did not reflect several cash payments made by Canning. Compl. ¶¶ 40-41. On June 19, 2009, Tommy Wente, Canning's agent, received a second billing statement ("statement 2"). Compl. ¶ 57. Statement 2 listed a balance of $4,378.80 but still did not reflect all of Canning's cash payments. *Id.* Wente contacted Poole, and she issued a third statement ("statement 3") four days later. Compl. ¶ 59. Statement 3 included finance charges and was dated May 31, 2009, even though it was generated on or around June 23, 2009. *Id.*

Canning alleges that before she had an opportunity to resolve the issues with statement 1, and before she had seen statements 2 and 3, Poole's attorney filed a veterinarian's lien against Canning pursuant to Kentucky Revised Statute § 376.470. Compl. ¶ 66. That statute provides that "[a]ny licensed veterinarian who performs professional services for an animal, by contract with, or by the written consent of, the owner or authorized agent shall have a lien on the animal to secure the cost of the service provided." *See* Compl. ¶¶ 63, 66; Ky. Rev. Stat. Ann. § 376.470 (LEXIS 2010). Canning further alleges that Phelps signed an *ex parte* lien on June 23, 2009, and a second lien on June 25, 2009. Compl. ¶ 66-68. The second lien provided that the Sheriff of Bourbon County was commanded to "levy upon the horses which are in the possession of Clark's Run Farm d/b/a Highview Stables . . . the amount of $3,850.92 plus accruing costs, interest

thereon, attorney's fees, and the costs of asserting this action, all pursuant to KRS § 376.470." Compl. ¶ 69. It further ordered that the listed horses "be left in the custody and control of William Poole . . . and are not to be removed or sold, pending further order of this Court." Compl. ¶ 70.

On June 27, 2009, allegedly before Canning had reasonable notice of the lien filings, Poole's attorney, Brian Privett, instructed the Bourbon County Shefiff's department to execute the lien and warrant, claiming that Phelps had authorized the seizure. Compl. ¶ 72. Canning alleges that several of the defendants unlawfully entered the boarding farm where she kept her horses and "systematically seized an estimated three million dollars [ ] of [her] equine stock." Compl. ¶ 73. Canning alleges that in the course of the seizure, horses not named in the lien and warrant were seized and that the horses were treated with extreme cruelty. Compl. ¶ 80. On June 29, 2009, counsel for Canning and for Poole stipulated by order that Canning would pay a $5,000 security bond into the court to satisfy the lien.

Canning's claims against Phelps include unlawful search and seizure in violation of the Fourth Amendment, violation of Canning's due process rights under the Fourteenth Amendment, civil conspiracy, and malicious abuse of legal process. Compl. ¶¶ 100, 103, 113, 119, 120, 133.

II. **Analysis**

Canning's claims against Phelps are barred by judicial immunity. A judge is immune from a suit for money damage. *Mireles v. Waco*, 502 U.S. 9, 9 (1991).

This immunity can be overcome only in two circumstances: (1) actions taken in the "complete absence of all jurisdiction"; or (2) actions not taken in the judge's official capacity. *Id.* at 11-12 (citations omitted).[1]

Canning erroneously argues that judicial immunity does not apply because Phelps acted in the complete absence of all jurisdiction. Specifically, Canning contends that the fact that she filed the instant suit under diversity jurisdiction and that she was not properly notified that her horses were going to be seized "brings into question the jurisdiction of the court and [Phelps]." R. 24 at 5. The scope of a judge's jurisdiction must be construed broadly when a court considers immunity. *Stump v. Sparkman*, 435 U.S. 349, 356-67 (1978). Moreover,

> a judge will not be deprived of immunity because the action [she] took was in error, was done maliciously, or was in excess of [her] authority; rather, [she] will be subject to liability only when [she] has acted in the "clear absence of all jurisdiction."

*Stump*, 435 U.S. at 356-67. Here, the fact that the instant suit was brought under diversity jurisdiction and the issue of whether Canning had notice about the seizure do not affect whether Phelps had jurisdiction over the state court action, nor has Canning put forth any plausible jurisdictional argument. Thus according to the facts

---

[1] Relying on *Pulliam v. Allen*, 466 U.S. 522 (1984), Canning contends that judicial immunity does not preclude a suit pursuant to 42 U.S.C. §1983 to provide redress for constitutional violations. R. 24 at 4-5. *Pulliam* dealt with injunctive relief as opposed to money damages, and has been superseded by statute. *See* 42 U.S.C.A. § 1988(b) (LEXIS 2010). Section 1983 does not impose liability on judges acting under color of law who perform official functions in the judicial process, however. *See Briscoe v. Lague*, 460 U.S. 325, 334 (1983).

as alleged, Phelps did not act in "a clear absence of all jurisdiction."

Canning's allegations also fail to show that the complained-of action was taken outside of Phelps's judicial capacity. Determining whether an act by a judge was a "judicial" one requires evaluating the nature of the act itself, including "whether it is a function normally performed by a judge, and to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity." *Stump*, 435 U.S. at 362. Here, consideration of both factors indicates that Phelps was acting in her judicial capacity: the issuance of the lien was a function normally performed by a judge, and the fact that the lien was issued based on filings before the court indicates that the parties anticipated dealing with Phelps in her judicial capacity. Thus, Canning fails to state a claim against Phelps in her individual capacity as well.

Accordingly, Canning's claims against Phelps are barred by judicial immunity and they will be dismissed for failing to state a claim upon which relief can be granted. Because the claims against Phelps are clearly barred by judicial immunity, the court need not reach the issue of sovereign immunity.

## III. Conclusion

Accordingly,

**IT IS ORDERED** that Phelps's motion to dismiss, R. 17, is **GRANTED**.

Signed on  August 12, 2010    
JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY