UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 10-16-JBC

NANCY L. CANNING,                                                                  PLAINTIFF,

V.                  **MEMORANDUM OPINION & ORDER**

BARBARA W. POOLE, ET AL.,                                    DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court upon the motions for summary judgment of two defendants, Brian Privett, R.102, and Barbara Poole, R.107. For the following reasons, the court will grant Privett's motion and will grant Poole's motion in part and deny it in part.

Nancy Canning filed this action after a series of alleged events that resulted in the seizure of several of her horses. She claims that the defendants unlawfully entered a farm and seized her equine stock, unlawfully conspired to seize and control her horses, falsely claimed a debt owed by her, and interfered with her horse-breeding business. Brian Privett was brought into this suit as a defendant for his involvement as legal counsel for Barbara Poole in a state court action. Privett represented Poole in a dispute over a claimed debt owed by Canning to Poole for unpaid veterinarian bills, and he drafted and filed a veterinarian lien against Canning's equine stock. Canning also brings suit against Poole for allegedly

1

performing unrequested veterinary services on several of her horses, sending inaccurate billing statements to Canning, and directing that an unlawful veterinarian's lien be filed against Canning's horses.

Specifically, Canning brings claims of unlawful and unreasonable search and seizure, due process violations, civil conspiracy, conversion, malicious abuse of legal process, intentional infliction of emotional distress, and tortious interference with business against both Privett and Poole. She alleges violations of Kentucky law against Privett as well as claims of veterinary malpractice, slander, and breach of contract against only Poole. Because Canning has "fail[ed] to make a showing sufficient to establish the existence of [] element[s] essential to [her] case" as to all claims against Privett and most claims against Poole, *see Celotex Corporation v. Catrett*, 477 U.S. 317, 322 (1986), the court will grant summary judgment fully in favor of Privett and partially in favor of Poole.

First, Canning alleges violations of her constitutional right to be free from unreasonable searches and seizures under the Fourth Amendment pursuant to 42 U.S.C. § 1983. Because neither Privett nor Poole acted under color of state law when they performed the alleged events, Canning cannot meet the necessary elements for this claim. *Hahn v. Star Bank*, 190 F.3d 708, 717 (6th Cir. 1999). In order to succeed on a § 1983 claim, "a plaintiff must show that the defendants while (1) acting under color of state law (2) caused the deprivation of a federal right, constitutional or statutory." *Id.* Even though Privett was acting as a state-licensed attorney when he filed the veterinarian lien on behalf of Poole, "private

2

attorneys, by virtue of being officers of the court, do not act under color of state law within the meaning of section 1983." *Id.* (citing *Barnard v. Young*, 720 F.2d 1188, 1189 (10th Cir. 1983)). Canning also argues that Poole and Privett in their capacities as private actors satisfy the state action component because they were in a "symbiotic relationship" with the state, but she cites no law to support this argument. Therefore, summary judgment is appropriate on the § 1983 unreasonable search and seizure claims against Privett and Poole.

Second, Canning's procedural due process claims against Privett and Poole cannot succeed.[1] Canning alleges that the seizure of her horses by the defendants constituted a deprivation of her due process of law. The lien and warrant in question, however, did not authorize the horses to be removed from the property where they were boarded. R.1-9, p.9. Canning argues that the horses were "seize[d] and transport[ed] . . . without legal basis." This alleged deprivation cannot constitute a violation of procedural due process under § 1983 because "a deprivation of a constitutionally protected property interest caused by . . . unauthorized conduct does not give rise to a § 1983 procedural due process claim." *Zinermon v. Burch*, 494 U.S. 113, 115 (1990). The record shows, and Canning admits, that the seizure of her horses was not legally authorized; therefore, summary judgment will be granted against her on the due process claims.

Third, Canning's claim that Privett and Poole unlawfully conspired with other

---

[1] Even though Count 2 of Canning's amended complaint alleges a due process violation generally, her specific allegations support a procedural due process claim, and she offers no argument in support of a substantive due process claim.

3

defendants to seize and gain ownership and control of her horses cannot succeed because Canning has failed to present any evidence of a conspiracy between Privett or Poole and the other defendants. "In order to prevail on a claim of conspiracy, the proponent must show an unlawful/corrupt combination or agreement between the alleged conspirators to do by some concerted action an unlawful act." *James v. Wilson*, 95 S.W.3d 875, 897 (Ky. App. 2005)(citing *Smith v. Board of Education of Ludlow*, 94 S.W.2d 321 (Ky. 1936)). Canning's conclusory statements that Privett, Poole, and other defendants participated in a conspiracy – i.e., that they "joined to work in concert" to seize her horses – do not pass muster. R.5, p.22-23; she offers no evidence of such a conspiracy.

Fourth, Canning claims that Privett and Poole's alleged acts of wrongfully exercising dominion and control over her horses by instructing others to seize them constitutes conversion as a substantial interference with the use and enjoyment of her property. Canning, however, has not presented a prima facie case of conversion, which requires a showing that "the defendant exercised dominion over the property in a manner which denied the plaintiff['s] rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment." *Ky. Ass'n of Counties All Lines Fund Trust v. McClendon*, 157 S.W. 3d 626, 632 (Ky. 2005)(citing 90 C.J.S. Trover and Conversion § 4 (2004)). Nowhere does Canning allege that Privett or Poole exercised dominion over her property for their own use and enjoyment, nor do the facts indicate such use. Even if the horses were seized as Canning describes and placed in the possession of Poole and other defendants,

4

she never alleges or shows that Poole's possession was for her own use and enjoyment rather than as security for an alleged debt; therefore, summary judgment on those claims is appropriate.

Fifth, Canning claims that Privett, Poole, and others have committed "malicious abuse of legal process." R.5, p.25. This claim appears to combine two separate causes of action, malicious prosecution and abuse of process. Canning has failed to establish evidence sufficient to defeat summary judgment on either theory. One required element "necessary to the maintenance of an action for malicious prosecution" is that a proceeding, which was instituted or continued by the plaintiff, is terminated "in defendant's favor." *Raine v. Drasin*, 621 S.W. 2d 895, 899 (Ky. 1981)(internal citations omitted). Here, the record is devoid of any indication or allegation that the state proceeding at issue has been terminated in Canning's favor; thus any potential malicious prosecution claim against Privett and Poole fails.

Nothing in the record shows that Privett, acting in his role as Poole's attorney and filing a lien against Canning's property, acted with an ulterior purpose, as required to prove abuse of process. *See Simpson v. Laytart*, 962 S.W. 2d 392, 394 (Ky. 1998). Canning's conclusory statements about Privett's acting in conspiracy with others to deprive Canning of her horses are not enough to show such an ulterior motive. The lien filed by Privett and signed by a judge indicated that the horses were not to be removed from the farm where Canning was boarding them. No evidence shows that Privett filed a lien on behalf of Poole for any reason

besides securing an alleged debt owed by Canning to Poole.

Also, Canning has shown no ulterior purpose for Poole's actions. Canning claims that Poole improperly utilized the lien and warrant, which stated that Canning's horses were not to be sold or removed from the property, as a basis for having the horses seized. But she provides no evidence to support this argument. Nothing in the record, besides Canning's own statements, indicates that Poole hired Privett to file the lien for any reason other than to secure the cost of services. Even Tommy Wente, Jr., who testified that he saw Poole trying to seize Canning's horses, states that Poole claimed she was not paid by Canning for her veterinarian services. R.1-12, p.4-5. Without more than a scintilla of evidence showing an ulterior motive by Poole or Privett, summary judgment on these claims is appropriate.

Sixth, Canning alleges intentional infliction of emotional distress by Privett, Poole, and others, but she fails to establish any evidence to support her claim that she suffers severe emotional distress related to the conduct of the defendants. Although Canning claims that she has identified an expert witness, *see* R.110, pp.1 & 6, she has not specified which expert could testify as to her severe emotional distress nor has she offered any proof of her emotional distress. Rather, she has admitted that "she has received no treatment for any emotional distress or other mental health issues arising from the facts of this case." R.90, p.2. Because a showing of severe emotional distress is necessary for a claim of intentional infliction of emotional distress, *see Humana of Ky., Inc. v. Seitz*, 796 S.W.2d 1, 3

6

(Ky. 1990), Canning's claim cannot survive the motions for summary judgment.

Seventh, Canning's claim of tortious interference with a business relationship cannot succeed because Canning has failed to establish "the existence of a valid business relationship or its expectancy" and evidence of special damages, two of the six required elements of the claim. *CMI, Inc. v. Intoximeters, Inc.*, 918 F. Supp. 1068, 1080 (W.D.Ky. 1995) (citing *Nat'l Collegiate Athletic Ass'n v. Hornug*, 754 S.W. 2d 855 (Ky. 1988)). Canning alleges that Privett interfered with her horse breeding business by filing a lien on her horses and by "directing and/or instruct[ing] the . . . Sheriff's Department to seize and remove [her] horses." R.5, p.32. Canning also claims that "Poole went to High View Stables . . . for purposes of removing key boarding and breeding equipment, and for deliberately interfering with Plaintiff's horse breeding business" and that Poole "performed unauthorized veterinary services and/or administered drugs and/or failed to administer drugs to Plaintiff's horses" to further her own business and to interfere with Canning's horse breeding business. R.5, p.30. However, nowhere does Canning specifically state with whom she had a business relationship or expectancy or how Privett or Poole interfered with a particular business relationship.

Even if Canning's broad allegations could show the existence of a business relationship, she has not made a showing of "special damages." *CMI, Inc.*, 918 F.Supp at 1080 (W.D. Ky. 1995). Canning does not seek, nor does she provide any evidence to support, special or "pecuniary" damages. *Id.* at 1081. There is no "evidence that [Privett or Poole] either caused a third party not to enter into a

7

contractual relationship [with Canning] or that they caused someone to discontinue an existing relationship." Because a plaintiff "must allege and prove special damages to recover under this cause of action," and Canning offers no evidence to support her claim for tortious interference with her horse breeding business, summary judgment will be granted.

Eighth, Canning alleges that Privett violated Kentucky law by instructing the sheriff to "seize and remove [her] horses," by failing to provide notice to her of the veterinary lien, by "knowingly and falsely represent[ing] to the Court and to [her] that KRS 376.470 et al permit[s] a veterinarian to perfect a vet lien by seizure," and by "acting to seize [her] horses when [he] knew that the Lien and Warrant" instructed that her horses be left in custody and control of William Poole. R.5, p.33. None of these allegations specifies what law Privett allegedly violated. Canning also claims that Privett violated KRS § § 376.110, 376.120, and 376.130 by allegedly having her horses seized before a hearing was held on the matter. These statutes provide no cause of action against Privett.

KRS § 376.110 sets forth the process for enforcement of a lien and referral of the action to a commissioner. The statute does not require the attorney who filed the lien to refer the case to a commissioner. And "the failure to refer the cause to the commissioner and have such report before the court when it meets does not . . . deprive the court of the power or the jurisdiction to enter a judgment enforcing the lien." *Lorton v. Ashbrook*, 295 S.W. 1027, 1028 (Ky. 1927). KRS § § 376.120 and 376.130 concern duties of the commissioner and do not apply to

8

Privett as the filing attorney. Thus, summary judgment is appropriate.

Ninth, Canning claims that Poole committed veterinary malpractice by departing from the veterinary medical community's standard of care when she performed allegedly unauthorized services that resulted in the termination or prevention of pregnancies and injuries in several of Canning's horses. Canning, however, has offered no expert witnesses to testify in support of her claims. "Generally, liability for medical negligence requires expert medical testimony establishing the applicable standard of care and the breach thereof," unless other medical testimony provides an adequate foundation for *res ipsa loquitur* or the negligence and injury are "'so apparent that laymen with a general knowledge would have no difficulty in recognizing it.'" *Green v. Owensboro Medical Health System, Inc.*, 231 S.W.3d 781, 783-84 (Ky. App. 2007)(citing *Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. 1965)). Canning argues the applicability of neither of those two exceptions.

Even though Canning has offered a list of potential witnesses that includes at least two doctors, she has never stated whether any of these doctors will testify or are qualified to testify as to the standard of care in the veterinary community. The affidavits of Dr. Kendall and Dr. Burns do not discuss the issue. R.5-12 & 5-13. Tommy Wente, Jr., provides testimony that Poole administered unnecessary and unauthorized shots to Canning's horses. But Canning has not shown that Wente, as someone who boards and takes care of Canning's horses but is not a doctor of veterinarian medicine, is a medical expert on the issue. Because expert testimony

9

is necessary to establish Canning's claim of veterinary malpractice and the deadline for disclosure of expert witnesses has passed, *see* R.67, summary judgment will be granted.

Tenth, Canning alleges that Poole committed slander by making and publishing "defamatory statements about [her] to veterinarians, horse haulers" and others, which "damaged [her] reputation in the horse breeding industry." R.5, pp.34-35. However, Canning has not provided any evidence of specific statements, including to whom or when statements were made or the content of such statements. An essential element of defamation is "a false and defamatory statement concerning another." *Harstad v. Whiteman*, 338 S.W.3d 804, 810 (Ky. App. 2011)(citing Restatement (Second) of Torts § 558 (1997)). Without evidence of a particular statement, Canning has failed to establish the existence of an essential element of her claim, and summary judgment is appropriate.

Lastly, Canning claims that Poole breached an oral contract in two ways: by failing "to perform requested services and/or perform[ing] unauthorized services" which were detrimental to Canning's horses, and by failing to provide Canning with timely invoices. R.5, p.36. Poole argues that Canning's lack of expert testimony on the issues of whether Poole's alleged conduct deviated from the standard of care required by veterinarians and whether the alleged conduct is causally connected to any specified damages warrants a grant of summary judgment on this claim. However, a genuine dispute remains as to whether the three required elements for a breach-of-contract claim have been established: "1) existence of a contract; 2)

breach of that contract; and 3) damages flowing from the breach of contract." *Metro Louisville/Jefferson County Gov't v. Abma*, 326 S.W.3d 1, 8 (Ky. App. 2009).

Poole and Canning had an oral agreement for veterinarian services in exchange for a fee. Canning alleges that Poole breached the contract for services by performing services outside the context of the agreement and by failing to perform tasks upon which the parties agreed. No expert testimony is needed to show whether Poole deviated outside any agreed-upon services. Even though an expert witness might be necessary to prove harm from the performance of unauthorized services by Poole on Canning's horses, Canning also alleges damages in the form of her having to defend Poole's lien action based upon Poole's failure to provide timely invoices. Canning does not define "defend," but the court assumes this means expenses and legal fees and will construe her pleading generously because she is *pro se*. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).[2] At this stage, the court accepts Canning's facts that her defense of the lien was based on untimely invoices. *Smith Wholesale Co., Inc. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007). Poole provides no legal argument as to why this is not a valid claim for damages; therefore, a genuine issue remains as to whether Canning can recover on her breach-of-contract claim, and the court will deny summary judgment. Accordingly,

**IT IS ORDERED** that the defendant Brian Privett's motion for summary

---

[2] Canning is cautioned, however, that the court will require more specificity at pretrial conference

judgment, R.102, is **GRANTED**.

    **IT IS FURTHER ORDERED** that the defendant Barbara Poole's motion for summary judgment, R.107, is **GRANTED** in part and **DENIED** in part, in accord with this opinion.  Summary judgment is granted for Poole on all claims asserted against her except the breach-of-contract claim.

    **IT IS FURTHER ORDERED** that the defendant Brian Privett's motion in limine, R.103, is **DENIED** as moot.

    **IT IS FURTHER ORDERED** that Canning's trial exhibits must provide more specific proof of damages than she has heretofore furnished.  Specifically, the scheduling order requires all pretrial compliance documents to be filed no later than seven (7) days before the pretrial conference.  If Canning fails to provide proof of damages for her breach-of-contract claim, the court will entertain a renewal of Poole's motion for summary judgment.

Signed on October 18, 2012



JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY

---

and trial.