UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| NANCY L. CANNING, | ) |
| | ) |
| Plaintiff, | ) Civil No.: 10-16-GFVT |
| | ) |
| V. | ) **MEMORANDUM OPINION** |
| | ) **&** |
| BARBARA W. POOLE, ET AL., | ) **ORDER** |
| | ) |
| Defendant. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On December 18, 2012, the Court[1] granted Defendant Brook Ledge's second motion for summary judgment, disposing of the last of Plaintiff Nancy Canning's claims against the three horse transportation companies named in her complaint. [R. 123]. Now, Brook Ledge, Morrissey's Horse Pullmans, and Creech Horse Transportation, (collectively "Horse Transportation Defendants") argue that these claims were either baseless or made as a result of bad faith, such that Canning should pay the resulting attorney's fees pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 1927, or the Court's implied powers. [R. 125]. Though Canning, who has been dormant in this case for over a year, has not responded in opposition, the Court finds that the Horse Transportation Defendants have not sufficiently justified the imposition of attorney's fees under any of the stated theories, and therefore, their Motion for Attorney Fees and Non-

---

1 Judge Jennifer Coffman was the presiding judge during the majority of this case, including the period during which all previous dispositive motions were resolved. Upon Judge Coffman's retirement, this case was reassigned to the

1

Taxable Expenses shall be DENIED.

I

Canning claims that as a result of a dispute over the performance of and payment for certain veterinary services, over $3,000,000 worth of equine stock was improperly removed from her farm in execution of a lien placed on those horses. She states that the removal was effectuated through the use of certain commercial horse haulers, including Morrissey's Horse Pullmans, Creech Horse Transportation, and Brook Ledge. As a result, Canning brought claims against these horse haulers, among other defendants, for violation of her Fourth Amendment rights pursuant to 42 U.S.C. § 1983, conversion, malicious abuse of legal process, and intentional infliction of emotional distress. [R. 5].

Before a scheduling order was entered in the case or the parties had begun discovery, Brook Ledge moved the Court for summary judgment. [R. 37]. Therein, Brook Ledge stated that it had no involvement in the incident and that none of its agents or equipment were even present at the time that these events occurred. In support, Brook Ledge tendered affidavits from its Kentucky dispatcher and its co-defendant Barbara Poole, both of whom testified that Brook Ledge had no involvement in the removal of Canning's horses. [R. 39]. However, Canning responded with an affidavit in which she swore under oath that at the time of the incident she personally saw a horse carrier with "Brook Ledge" written on it and horses being loaded therein. [R. 42-1 at 2]. Further, she noted that some of the horses loaded into the Brook Ledge carrier were injured, including one that might have to be euthanized. [*Id.*] In the same affidavit, Canning also claimed to have seen Morrissey's and Creech Horse Transportation trailers used to

---

undersigned for all further proceedings. [R. 124].

2

remove horses from her farm. She identified a driver and horses that she claimed to have been associated with the Morrissey's trailer and indicated that she had to intervene to stop Morrissey's agent from "beating" Chief Gossip, one of her mares. [*Id*. at 1-2]. Canning also stated that officials from the Bourbon County Sheriff's Department were present with a court order by which they "commanded the horse haulers to dispose of the horses by bailment." [R. 42 at 2]. The Court denied Brook Ledge's motion for summary judgment largely on the basis that Canning's affidavit showed a genuine issue of material fact. [R. 63].

In the same Order, the Court granted the motion of Canning's counsel to withdraw due to a "breakdown in the professional relationship." [R. 60, R. 58]. Canning never retained substitute counsel and thereafter pursued her claims *pro se*. Subsequently, the Court dismissed Canning's claims against horse haulers Morrissey's and Creech Transportation pursuant to Federal Rule of Civil Procedure 4(m) for failure to effectuate service within 120 days. [R. 64].

Being the only horse hauler remaining in the action, Brook Ledge filed a second motion for summary judgment to which Canning failed to respond. [R. 119]. The Court granted the motion, finding that Canning's Section 1983 claim failed because the horse hauler was not acting under color of state law. [R. 123 at 2]. Further, the Court found that Canning had not introduced sufficient evidence that Brook Ledge exercised dominion of her property for its own use or enjoyment in order to successfully maintain a conversion claim under Kentucky law. [*Id*.] The Court also disposed of Canning's malicious prosecution claims and abuse of process claims because she had neither shown that a prior proceeding had been terminated in her favor or that Brook Ledge had acted with any ulterior motive. [*Id*. at 3]. Finally, the Court found that Canning had set forth insufficient proof of emotional distress to proceed on her state law

3

intentional infliction of emotional distress claim. [*Id.*]

Following the entry of summary judgment in favor of Brook Ledge, the Horse Transportation Defendants filed the motion for attorney's fees that is presently pending before the Court. Therein, the Horse Transportation Companies petition the court under 42 U.S.C. § 1988, 28 U.S.C. § 1927, and its implied powers to award attorney's fees in the amount of $44,311.15. The Horse Transportation Defendants claims that this amount is warranted "because plaintiff's conduct was frivolous, unreasonable, or without foundation" and because Canning "unreasonably and vexatiously multiplied the litigation though her frivolous claim or at least conduct that is 'tantamount to bad faith.'" [R. 125-1 at 11].

II

A

The principle that each party bear the costs of his or her own litigation expenses, including attorney's fees, is so entrenched in the justice system of this country that it has become known as the "American Rule." *Fox v. Vice*, 131 S. Ct. 2205, 2213, 180 L. Ed. 2d 45 (2011) (citing *Alyeska Pipeline Service Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975)). However, in certain special circumstances, Congress has created exceptions wherein the fee may be shifted from one party to another. One such provision is 42 U.S.C. § 1988, under which a court may award attorney's fees to a party who prevails in an action to enforce provisions of, among others, Section 1983. Ordinarily claims for attorney's fees under Section 1988 are made by prevailing plaintiffs who have "succeeded in remedying some civil rights violation." *Fox*, 131 S.Ct. at 2213. "Fee shifting in such a case at once reimburses a plaintiff for what it cost him to vindicate civil rights and holds to account a violator

4

of federal law," *Id*. (citing *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n*, 434 U.S. 412, 48, 98 S. Ct. 694, 54 L. Ed. 2d 648 (1978); *Riverside v. Rivera,* 477 U.S. 561, 577–578, 106 S.Ct. 2686, 91 L.Ed.2d 466 (1986)) (internal quotation marks and citations omitted).

However, the Supreme Court has determined that, as in the Title VII context, recovery of attorney's fees under Section 1988 is not a one way street.  Under this provision, a prevailing defendant may also recover attorney's fees in order to "protect defendants from burdensome litigation having no factual basis." *Id*. (citing *Christiansburg* 434 U.S. 412 at 420). However, district courts may only award attorney's fees to a prevailing defendant under Section 1988, "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." *Id*.  Courts applying this standard are cautioned to "resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg Garment Co.,* 434 U.S. at 421-22.  Further, "because an award of attorney's fees against a losing plaintiff in a civil rights action is an extreme sanction it must be limited to truly egregious cases of misconduct. *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 437 (6th Cir. 2009) (citing *Jones v. Continental Corp.,* 789 F.2d 1225, 1232 (6th Cir.1986)) (internal quotation marks omitted).[2]

---

2 As demonstrated by Judge Sutton in *Lowery*, the Sixth Circuit Court of Appeals has oft vacated an award of attorney's fees granted by district courts which do not so limit the scope of Section 1988 . *Lowery*, 586 F.3d at 437 (citing *Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 300 (6th Cir.2008); *Revis v. Meldrum,* 489 F.3d 273, 293 (6th Cir.2007); *Lisle v. Met. Gov't of Nashville & Davidson County,* 73 Fed.Appx. 782, 791 (6th Cir.2003); *Tahfs v. Proctor,* 316 F.3d 584, 596 (6th Cir.2003); *Dubuc v. Green Oak Twp.,* 312 F.3d 736, 755 (6th Cir.2002); *Riddle v. Egensperger,* 266 F.3d 542, 553 (6th Cir.2001); *see also Salkil v. Mt. Sterling Twp. Police Dep't,* 458 F.3d 520, 532 (6th Cir.2006) (reversing under same standard of review for 28 U.S.C. § 1927)).

The Horse Transportation Defendants provide a clear and thorough recitation of the aforementioned legal standard for provision of attorney's fees, but are somewhat more evasive as to the particular facts of this case that, when applied, would render attorney's fees appropriate herein. The most salient reason that the Defendants seem to advance is that Canning's claims against them were baseless because, as they maintained from the very beginning, they had no involvement with the incident. In support of this argument Brook Ledge references its answer and first motion for summary judgment, which denied involvement and contained affidavits with sworn testimony of its dispatcher and a co-defendant that Brook Ledge was not present at Canning's farm during the relevant period. The Defendants note that no discovery ever materialized showing that they were at the scene of the incident or that Canning suffered emotional distress. The Horse Transportation Defendants also point to two new facts that they believe favor their position that Canning's claims are baseless. First, they indicate that the Court granted Brook Ledge's motion for summary judgment on the grounds that Canning failed to make a sufficient showing to establish the existence of elements essential to her case. Second, the Defendants have tendered additional affidavits, including one from Nicole Pieratt, who claims that Canning's attorney stated to her in a phone conversation that he was prepared to sue "all commercial horse transporters" to determine who was present at the incident. [R. 125-2]. The Defendants claims that this is "a clear indication Plaintiff and her attorney did not know who was present." [R. 125-1 at 2].

As an initial matter, it should be noted that the Court's ultimate determination that Canning's claims failed as a matter of law is not alone sufficient to merit an award of attorney's fees. *See Smith v. Smythe-Cramer Co.*, 754 F.2d 180, 183 (6th Cir. 1985) (citing *Christiansburg,*

6

449 U.S. at 16, 101 S.Ct. at 179) ("the mere fact that allegations prove legally insufficient to require a trial does not, for that reason alone, render a complaint groundless under *Christiansburg*.").

Additionally, "a plaintiff should not be assessed his opponent's attorney fees unless the court finds the claim was groundless at the outset or that the plaintiff continued to litigate after it clearly became so." *Wilson-Simmons v. Lake Cnty. Sheriff's Dep't*, 207 F.3d 818, 823 (6th Cir. 2000) (citing *Smythe-Cramer Co.*, 754 F.2d at 183) (internal quotation marks omitted). "This requires inquiry into the plaintiff's basis for filing suit. Awards to prevailing defendants will depend on the factual circumstances of each case." *Id.* (internal quotation marks omitted). While Canning's methods of litigating this case has left a good deal to be desired, she has clearly articulated the basis under which she filed her claims against the Horse Transportation Defendants. By way of a sworn statement filed in response to Brook Ledge's first motion for summary judgment, Canning stated that she personally saw representatives of Brook Ledge, Morrissey's, and Creech on her farm at the time of the incident. She alleges to have seen them participating in the removal of the horses from her farm. She believed these horses to be worth a large sum of money and claims that she physically intervened in order to stop one of the Defendants from abusing one of the horses. Moreover, she claims that the Horse Transportation Defendants were being commanded by the Bourbon County Sheriff's patrol. Surely, if Canning had seen this, her claims for a Fourth Amendment violation under Section 1983, conversion, intentional infliction of emotional distress, and malicious use of process were not baseless.

This conclusion is not changed by the parade of counter affidavits that the Defendants submit to the Court. The most recent affidavits had not been filed in the record before the

motion for attorney's fees, and so it is unclear whether they were available to Canning to have convinced her of the baselessness of her claims any earlier. Moreover, the recently submitted affidavit of Thom Peavey states that two of the Defendants were not present at the scene of the incident, but admits that Morrissey's was. Most importantly, however, the affidavits are nothing more than conflicting witness testimony from both sides. On one hand the Plaintiff maintains that she saw the Defendants on her farm at the time of the incident involved in improper behavior. The majority of the Defendants' affidavits are simply testimony of their agents or co-defendants testifying in opposition to that fact. Had the case proceeded to trial, perhaps a jury would have found the testimony of the Defendants' witnesses persuasive and found that they were not present as Canning claimed; however, these statements advanced by the Defendants are insufficient to demonstrate that Canning's claims were frivolous, unreasonable, or without foundation so as to merit an award of attorney's fees to the Horse Transportation Defendants as prevailing parties under Section 1988.

B

The Horse Transportation Defendants argue that even if attorney's fees are not merited under Section 1988, the Court may impose them by virtue of its implied powers. As noted by the Defendants, "the inherent authority of the Court is an independent basis for sanctioning bad faith conduct in litigation." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511 (6th Cir. 2002) (citing, "*Chambers v. NASCO, Inc.*, 501 U.S. 32, 50, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)). Quoting an opinion of the United States Supreme Court on this issue, the Sixth Circuit Court of appeals defined the contours of a federal court's inherent power to sanction as follow:

8

> [A] court may assess attorney's fees when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." In this regard, if a court finds "that fraud has been practiced upon it, or that the very temple of justice has been defiled," it may assess attorney's fees against the responsible party, as it may when a party Ashows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order [ ]. "The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of Avindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy."

*First Bank of Marietta*, 307 F.3d at 512 (6th Cir. 2002) (quoting *Chambers,* 501 U.S. at 45-46, 111 S.Ct. 2123) (citations omitted).

The Horse Transportation Defendants once again meticulously set forth the aforementioned legal standard, but do not clearly apply any facts of this case to show that this standard has been satisfied. It remains unclear to the Court specifically how Defendants believe that Canning has acted in bad faith. The task of divining any bad faith attributable to Canning is made more difficult by the fact that the undersigned became involved with this matter very late in the process and thus has less familiarity with the interaction of the parties than it otherwise would. The implication the Defendants's motion seems to be that Cannning is a difficult person who has been dishonest to the parties and the Court. Toward that end, the Defendants attached an affidavit from Marcy Roberts, President of Morrissey's Horse Pullmans, which included a sworn statement that Canning's attorney noted to Roberts how difficult Canning could be. [R. 125-3]. In another affidavit, Nicole Pieratt, President of Sallee Horse Vans, testifies that Canning's attorney indicated that Canning planned to sue all commercial horse carriers. [R. 125-2]. The Defendants interpret this as a statement that Canning did not know which companies were present at the time of the incident and was thus lying in her prior affidavit. [R. 125-1 at 2].

9

Beyond the assertions of the Defendants, the record itself is clear that Canning's relationship with her attorney deteriorated such that he withdrew. [R. 58]. After that, Canning proceeded *pro se* for a time, and then apparently discontinued her pursuit of her claims all together. The Court understands the frustration of the Defendants in litigating this matter under these circumstances. However, Defendants have not sufficiently shown any actions taken by Canning that have so defiled the temple of justice as to be considered bad faith, vexatious, wanton, or oppressive. Further, though the Court might not have the usual familiarity with the case of having presided over it from the beginning, the record does not seem to reveal that Canning has acted in bad faith, at least as it concerns the Horse Transportation Defendants. Therefore, the Court will not use its implied powers to sanction Canning and award attorney's fees to the Defendants.

C

Finally, the Defendants argue that attorney's fees are available to them under 28 U.S.C. § 1927. Under Section 1927, "Any attorney or other person admitted to conduct cases in any court…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "Absent a showing of bad faith, sanctions may be imposed at least when an attorney knows or reasonably should know that a claim pursued is frivolous, or that his or her litigation tactics will needlessly obstruct the litigation of nonfrivolous claims." *Riddle v. Egensperger*, 266 F.3d 542, 553 (6th Cir. 2001) (*Ridder v. City of Springfield,* 109 F.3d 288, 298 (6th Cir.1997)). Further, in the context of Section 1927, sanctions are not appropriate for failure to "undertake a reasonable inquiry into a

10

claim," or for "simple inadvertence or negligence that frustrates the trial judge." *Id*. (citations omitted). Instead, "There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party." *Id*. (citing *In re Ruben,* 825 F.2d 977, 984 (6th Cir.1987).

The Defendants engage in substantial discussion as to the interesting issue of whether Section 1927 could apply to a *pro se* plaintiff. [R. 125-1 at 9-13]. However, the Court need not opine on this issue because whether or not Section 1927 generally permits an award of attorney's fees in the case of a *pro se* plaintiff, such fees are not warranted here. From the Court's previous findings it is clear why this is the case. Under Section 1988, the Court has found that Canning's claims were neither frivolous, unreasonable, or without foundation. Further, the Court has found that Canning did not act in bad faith, vexatiously, wantonly, or for oppressive reasons so as to merit the use of the Court's implied powers. The Horse Transportation Defendants have advanced no additional facts suggesting that Canning, through bad faith, frivolity, or obstruction, unreasonably and vexatiously "multiplied the proceedings," and therefore the Court shall, for the same reasons as previously articulated, refuse to award attorney's fees under Section 1927 as well.

III

Accordingly, for the aforementioned reasons, it here hereby **ORDERED** that the Defendants' Motion for Attorney's Fees and Non-Taxable Expenses [R. 125] is **DENIED**.

11

This 13th Day of September 2013.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge